# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 28, 2011

## STATE OF TENNESSEE v. RANDALL LEE BROWN

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 271451, 271536, 272023    Don W. Poole, Judge**

---

**No. E2011-00449-CCA-R3-CD-FILED-MARCH 12, 2012**

---

The defendant, Randall Lee Brown, was sentenced, as a Range III, persistent offender, to an effective sentence of eleven years incarceration following his guilty pleas to multiple offenses in Hamilton County. On appeal, the defendant contends that the trial court imposed an excessive sentence and erred by denying him an alternative sentence. However, we are unable to review the defendant's issues because the record before us does not contain a transcript from the guilty plea hearing, which is needed for complete review. As such, we must presume that the trial court's determinations were correct and, accordingly, affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Michael L. West, Chattanooga, Tennessee, for the appellant, Randall Lee Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bates W. Bryan, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

**Procedural History**

In December 2010, the defendant entered guilty pleas, as a Range III offender, to multiple felony convictions, including: (1) two counts of theft of identity, Class D felonies; (2) two counts of forgery, Class E felonies; (3) two counts of theft of property, Class D felonies; and (4) fraudulent use of a credit or debit card, a Class D felony. The possible sentencing range for each of the offenses, as a Range III offender, was eight to twelve years for the Class D felonies and four to six years for the Class E felonies.

After acceptance of the pleas, a sentencing hearing was held in January 2011, at which a presentence investigation report was received into evidence by stipulation of the parties. The State called Jeffery Higginbotham, one of the identity theft victims, to testify. He testified that he had lost his wallet but was unaware of the defendant's involvement until approximately one month later when he was contacted by a detective. Mr. Higginbotham was informed that the defendant had been using his credit card and had "really tore up" his credit. He opined that the defendant's actions had cost him a lot of time and caused him heartache, as well as approximately $1,000 spent trying to restore his credit through the use of a recovery service. He learned that the defendant had virtually destroyed his credit, going so far as to sell his social security and credit card numbers. Mr. Higginbotham testified that he had been hurt severely by the defendant's actions. In addition to his testimony, Mr. Higginbotham prepared a written victim impact statement, which was admitted into evidence.

The next witness called was the defendant. The forty-two-year-old defendant testified that he had attended college for two years and had owned a successful tree-trimming business in Chattanooga for approximately ten years. He acknowledged that he had several prior convictions for assault and theft during a five to six-year period when he was younger, but he claimed those were the result of his association with the wrong type of friends. He testified that just prior to these crimes, he and his "common law" wife, with whom he had two daughters, began having problems and separated. According to the defendant, following the separation he began using prescription drugs, including Oxycontin. At the same time, the defendant began dating the sister of one of his employees. The defendant testified that his new girlfriend had bad credit card debt and influenced him to commit the instant crimes. The defendant was aware that she had possession of various credit cards, but he claimed that he initially thought that they were her husband's credit cards when he began using them. He acknowledged that he eventually used the cards with full knowledge that they did not belong to his girlfriend.

On cross-examination, the defendant acknowledged his lengthy criminal history, which began in 1987, and included convictions for aggravated assault, receiving and concealing stolen property, auto burglary, grand larceny, three counts of theft of property, and multiple parole revocations. He also acknowledged several misdemeanor convictions. Prior to the instant offenses, the last crime the defendant was convicted of was a theft of

property over $500 in 1999, some twelve years after his first recorded conviction. The defendant also testified that he had two prior convictions in Georgia for forgery and for giving a false name, address, and birth date to a towing company. Additionally, he admitted that he currently had six to seven cases pending in Georgia.

The defendant testified that he never intended to harm the victim. He expressed remorse for his actions and testified to a willingness to make restitution. However, he maintained that it was his girlfriend, not him, who had stolen the identities and credit cards from the victims, and he stated that he had only used the cards because she had them. The defendant went on to request a sentence of probation because he believed himself to be a hard-working man who strived to do well for his family and to provide the community with a much-needed service.

The defendant also called two character witnesses to the stand, including a former customer and the defendant's daughter. Both expressed confidence that the defendant, if given the chance, could and would comply with any conditions of probation. Both testified that they believed the defendant was an appropriate candidate for an alternative sentence.

After hearing the evidence presented, the trial court found that the defendant was a Range III, persistent offender and imposed the following sentences: (1) five years for each forgery conviction; (2) ten years for each theft of property conviction; (3) ten years for one identity theft conviction; (4) ten years for the fraudulent use of a credit card conviction; and (5) eleven years for the remaining conviction for identity theft. All the sentences were ordered to be served concurrently, resulting in an effective sentence of eleven years.

The court then considered the defendant's request for probation. However, the trial court found that the defendant was not a favorable candidate for alternative sentencing based upon his prior criminal history, his previous actions, the presentence report, and the facts and circumstances of the instant cases. The defendant has now timely appealed his sentence.

**Analysis**

On appeal, the defendant contends that his sentence is excessive and that the trial court erred in ordering him to serve his sentence in confinement. However, as noted by the State in its brief, the defendant has failed to include a transcript of the guilty plea hearing in the record, and we conclude that this failure precludes a *de novo* review of his sentences and requires this court to presume that the determinations made by the trial court were correct.

Under Tennessee law, the defendant bears the burden of preparing a record that conveys a fair, accurate, and complete account of what transpired with respect to those issues

that are the bases of the appeal. T.R.A.P. 24(b); *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). The 1989 Sentencing Act, as amended, requires a sentencing court to consider evidence received at the trial. T.C.A. § 40-35-210(b)(1). This court has previously noted that:

> For those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

*State v. Chadwick Allen Johnson*, No. E2005-02219-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Apr. 25, 2008) (citing *State v. Keen*, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999)). As noted in a recent case, "[t]his court considers the guilty plea hearing to be vital to a *de novo* review and potential resentencing by this court as required by law." *State v. Christine Caudle*, No. M2010-00172-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Dec. 8, 2011) (citations omitted).

"Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." *Ballard*, 855 S.W.2d at 560-61. Thus, in the absence of an adequate record on appeal, this court must presume that the trial court's rulings were correct. *State v. Robinson*, 735 S.W.3d 136, 154 (Tenn. Crim. App. 2001). No matter how well-developed a record may appear to be, we will never know the full extent unless the guilty plea transcript is included. *Christine Caudle*, No. M2010-00172-CCA-R3-CD.

In the instant case, the evidence presented at the sentencing hearing does not clearly set forth the underlying facts of the case, one factor which was relied upon by the trial court in imposing this sentence. In fact, because we heard testimony from only one victim in the case, we can discern very little of the underlying facts of the remaining charges. We would expect to gain a better understanding of the facts of this case if we had access to the guilty plea hearing transcript. In sum, the defendant's failure to include the transcript of the guilty plea hearing in the record precludes a full *de novo* review by this court and, as such, we must presume the determinations made by the trial court were proper. Accordingly, the defendant is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

-4-

_____
JOHN EVERETT WILLIAMS, JUDGE